**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0927-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KENNETH W. VERPENT,

     Defendant-Appellant.

_____

Submitted October 11, 2018 – Decided October 25, 2018

Before Judges Koblitz and Currier.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. 09-09-1757.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Dennis Calo, Acting Bergen County Prosecutor, attorney for respondent (William P. Miller, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant Kenneth Verpent appeals from the August 5, 2016 order denying his motion to suppress the laboratory results of a urine test administered following a 2008 automobile accident. Our Supreme Court remanded defendant's case so that "exigency may be assessed on a newly developed and fuller record in light of this Court's holding in [State v. Adkins, 221 N.J. 300 (2015)]." Adkins determined that Missouri v. McNeely, 569 U.S. 141, 144 (2013), which found that alcohol in the bloodstream did not create a per se exigency, applied retroactively to cases "in the pipeline" at the time it was decided. Adkins, 221 N.J. at 303. After a plenary hearing, Judge Edward A. Jerejian found that under the totality of the circumstances, in light of the injuries to the other driver requiring police intervention and the time it would take to obtain a search warrant, exigent circumstances existed justifying the search without a warrant. We affirm substantially for the reasons articulated by Judge Jerejian in his oral opinion.

A jury convicted defendant of third-degree assault by auto, N.J.S.A. 2C:12-1(c)(2). Judge Jerejian convicted defendant of driving while intoxicated, N.J.S.A. 39:4-50; reckless driving, N.J.S.A. 39:4-96; and being under the influence of a controlled dangerous substance, N.J.S.A. 2C:35-10(b). Defendant has served his aggregate five-year prison sentence.

We summarized the State's evidence at the jury trial as follows:

> The State presented the following evidence at trial. At about 10:15 a.m., on December 3, 2008, Sabrina Patrick was traveling in her Honda Accord from Little Falls, New Jersey, to New York City. It was a clear, sunny day, and the road surface was dry. She was stopped at the main toll plaza for the George Washington Bridge when she heard a "very loud crash," after which she "was looking at the ceiling of [her] vehicle" because the driver's seat in her car had been broken by the impact and she had been flung backwards.
>
> Defendant, who was operating a flatbed tow truck, failed to stop and, according to an eyewitness, "slammed into the back of the Honda, and a second later that Honda hit the back of a truck in front of it." Her treating physician testified at trial that, as a result of the collision, Patrick had an "L3 burst fracture" of a vertebra, which required "spinal fusion" surgery and the insertion of metal rods into her body to provide needed support.
>
> An accident reconstruction expert testified that the left front side of defendant's truck struck the right rear side of Patrick's car at a minimum speed in the range of twenty-seven to thirty-three miles per hour. The expert attributed the accident to defendant's "delayed perception response;" that is, defendant failed to apply the truck's brakes until it was too late to avoid colliding with Patrick's car.
>
> . . . .
>
> Defendant's urine specimen tested positive for cocaine and marijuana metabolites. The State presented testimony from H. Chip Walls, who was qualified as an expert in forensic toxicology and the effects of alcohol

3

and drugs on humans. Walls concluded that, when defendant's truck struck Patrick's car, defendant was suffering the "downside" of his prior ingestion of cocaine; he was "crashing" after the initial stimulating effects of his cocaine use had passed.

[State v. Verpent, Docket No. A-3807-10 (App. Div. July 2, 2012) (slip op. at 2-3, 6), rev'd in part, appeal dismissed in part, 221 N.J. 494 (2015).]

After the testimony on remand, Judge Jerejian found that "it wasn't till 2:30 that police secured this sample, [and] . . . that there was probable cause that he was under the influence of drugs." At 11:20 a.m., the police officer had only concluded that defendant was "under the influence of something." At 12:10 p.m., when defendant was placed under arrest, the officer had yet to determine whether defendant was under the influence of alcohol or some other drug. At 12:44 p.m., defendant was given a breathalyzer test and had no alcohol in his blood. The officer and his tour commander then decided to call in a drug recognition expert (DRE) to determine whether defendant was under the influence of any drug. It was not until 2:30 p.m., when the DRE concluded his exam, that the officers had probable cause to believe that defendant was under the influence of a drug.

Defendant argues on appeal:

POINT I: DEFENDANT'S MOTION TO SUPPRESS EVIDENCE WAS IMPROPERLY DENIED

We "accord deference to the factual findings of the trial court, which had the opportunity to hear and see the . . . witness[es] at the suppression hearing and to evaluate the credibility of [their] testimony." State v Scriven, 226 N.J. 20, 32 (2016). "[W]e must respect factual findings that are 'supported by sufficient credible evidence' at the suppression hearing, even if we would have made contrary findings had we sat as the motion court." Ibid. (quoting State v. Elders, 192 N.J. 224, 243 (2007)). The factual findings of a trial court are also afforded deference because they are "substantially influenced by [the trial court's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Robinson, 200 N.J. 1, 15 (2009) (quoting Elders, 192 N.J. at 244).

The accident was very serious, it took approximately forty-five minutes to remove Patrick from her car, the police then conducted field sobriety tests based on defendant's bloodshot eyes, constricted pupils, and slow and unsteady gait. They brought defendant to headquarters for a breath test, determined he was not under the influence of alcohol, and then had him evaluated by a DRE before obtaining a urine sample. These reasonable actions took considerable time. In addition, under Adkins, the trial court may afford substantial weight to the potential dissipation of the substance in a defendant's system. Adkins, 221

5

N.J. at 303. The officers had probable cause to believe that defendant was under the influence of something at the time of his arrest, and they acted in an objectively reasonable manner under the circumstances to determine what was in defendant's system. See Adkins, 221 N.J. at 303 (directing reviewing courts to "focus on the objective exigency of the circumstances faced by the officers").

In a similar situation, our Supreme Court recently found objective exigent circumstances, not found by the motion judge, stating: "We conclude that any delay in seeking to obtain defendant's blood sample after the establishment of probable cause is attributed to the complexity of the situation and the reasonable allocation of limited police resources—not a lack of emergent circumstances, as argued by defendant." State v. Zalcberg, 232 N.J. 335, 351 (2018). The Supreme Court found that the seriousness of the accident, "the presence of several emergency-services units," the extrication of victims from a vehicle using the "Jaws of Life," and the fact that the accident "occurred on a typically busy state highway," all "indicate[d] an objective exigency . . . ." Id. at 351-52.

Similarly, here the accident occurred at a toll lane at the George Washington Bridge and required the closure of three out of four traffic lanes, and officers had to use the "Jaws of Life" to remove Patrick from her car. Unlike Zalcberg, in which the police officers smelled alcohol on the defendant and

6

found a "miniature bottle of an alcoholic beverage in the vehicle's console[,]" thus creating probable cause that the defendant was under the influence of alcohol, id. at 339, the police officers here could only determine, approximately two-and-a-half hours after the accident, when defendant's breathalyzer test was negative, that he was "under the influence of something" other than alcohol. This creates an even greater exigency than in Zalcberg, as the police officers, without knowing which substance was intoxicating defendant, had no way to estimate the dissipation rate. Therefore, the officers had no way of estimating how much time they had to obtain a urine sample.

We affirm substantially for the thorough reasons placed on the record by Judge Jerejian. Defendant's arguments concerning the lack of exigent circumstances are without sufficient merit to require further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

7                                                                    A-0927-16T1